UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVON ALVIN PHILLIPS,<br><br>Plaintiff,<br><br>v.<br><br>SGT. P. WHITE, BRYAN SISON (CV1269), CORPORAL N. HICKS, and CHULA VISTA POLICE DEPARTMENT,<br><br>Defendants. | Case No.:  24-CV-1818 TWR (DDL)<br><br>**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR LODGMENT, AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**<br><br>(ECF Nos. 44, 45) |

Presently before the Court are Plaintiff Devon Alvin Phillips' Motion for Lodgment ("Pl.'s Mot.," ECF No. 44) and the Motion to Dismiss Plaintiff's Fourth Amended Complaint and Claims Therein Under Rule 12(b)(6) ("Defs.' Mot.," ECF No. 45) filed by Defendants Patrick White, Nathan Hicks, Bryan Sison, and Dustin Dubois, as well as Plaintiff's Response to ("Opp'n," ECF No. 47) and Defendants' Reply in Support of ("Reply," ECF No. 48) Defendants' Motion.  The Court took Defendants' Motion under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  (*See* ECF No. 46.)  Having carefully considered Plaintiff's Fourth Amended Complaint ("FAC," ECF No. 42) and Plaintiff's Lodgment, the Parties' arguments, and the relevant law, the Court

/ / /

1

**GRANTS** Plaintiff's Motion (ECF No. 44) and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion (ECF No. 45), as follows.

**BACKGROUND**

**I.       Plaintiff's Allegations[1]**

On September 28, 2023, Plaintiff was standing on the sidewalk near his vehicle at trailer space #88 at 288 Broadway, Chula Vista, waiting for "police assistance regarding a fraud suspect (Sepulveda)." (FAC at 3, 17.) It appears that the trailer in space #88 was occupied by a man named Sepulveda and his girlfriend, R. Pedraza. (*Id.* at 17–18.) From what the Court is able to glean from IMG_0738, one of the videos in Plaintiff's Lodgment, Plaintiff and his fiancée (Veronica) suspected that Sepulveda (perhaps in concert with Pedraza) had been cashing fraudulent checks purportedly signed by Veronica's father, who was in the hospital. (*See* Lodgment IMG_0738.) It appears that Plaintiff and Veronica's son, Mercado, had gone to Sepulveda's trailer to see whether he was home. (*See id.*) When Mercado confirmed that Sepulveda was in the trailer, Plaintiff called his family to request that they send the police to their location. (FAC at 5.)

Plaintiff has provided photos taken outside the trailer and timestamped 1:01 p.m. (*See* Lodgment IMG_0007 & IMG_0008; *see also* FAC at 23 ("Ex. 3") & 24 ("Ex. 4").) While Plaintiff was in the car taking photos, Mercado exited the vehicle to approach the open gate in front of Sepulveda's trailer. (*See* FAC at 25 ("Ex. 5").) The next timestamp available is from video IMG_0738, which Veronica recorded at 1:42 p.m.

It is not entirely clear what happened between 1:01 p.m. and 1:42 p.m., when Plaintiff appears to be handcuffed and under arrest. Pedraza claimed that "she [had been] walking with Sepulveda when they were approached." (FAC at 17.) Pedraza told officers

---

[1]       For purposes of the Motion, the facts alleged in Plaintiff's Second Amended Complaint are accepted as true. *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true"). The Court is also mindful that "pro se pleadings are liberally construed, particularly where civil rights claims are involved." *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

2

that Plaintiff and/or Mercado hit Sepulveda several times with a baseball bat and then threw it over a fence, (*see id.* at 5, 10), and that Sepulveda had run away and was then chased by Mercado. (*See id.* at 9, 10, 18.) Plaintiff contends that Pedraza was not a witness, (*See d.* at 10, 18), and that Sepulveda's and Pedraza's comments to the police were not true. (*See id.* at 12.) He also claims that he would not "have been able to strike anyone with a bat because he was recovering from a spinal surgery." (*Id.* at 5; *see also id.* at 18.)

When Sergeant White arrived at the scene, he ordered Officer Harper to handcuff Plaintiff "until we figure out what is going on." (*Id.* at 3.) Although Officer Harper directed Plaintiff to sit on the ground, Plaintiff explained that he was unable to comply because he was recovering from spinal surgery. (*See id.*) Plaintiff was also searched. (*See id.* at 7.) Ultimately, Plaintiff was charged with kidnapping in violation of Section 207(a) of the California Penal Code, assault with a deadly weapon (not firearm) in violation of Section 245(a)(1) of the California Penal Code, and vandalism ($400 or more) in violation of Section 594(b)(1) of the California Penal Code. (*See* FAC at 7, 8, 16.)

Officer Sison took Plaintiff's car keys and conducted a search of Plaintiff's vehicle. (*See id.*) He removed a small lock box from Plaintiff's glovebox, which Plaintiff contends contained money, (*see id.*), but which the Officer commented to Veronica contained a firearm. (*See* Lodgment IMG_0868 at 15:25–50 (asking Veronica for a key to the "gun safe" which felt like he contained a firearm).) Ultimately, Plaintiff's vehicle was towed and impounded. (*See* FAC at 12, 43 ("Ex. 23").)

Officer Dubois prepared the official report, which contained several inconsistent comments from Sepulveda and Pedraza, (*see id.* at 5–6, 7–8, 9–11), as well as statements Officer Dubois attributed to Plaintiff that Plaintiff denies having made. (*See id.* at 6–7, 10, 13, 15.) For example, Officer Dubois' report indicated that, "several times while [Officer Dubois] was in booking with Phillips, [Plaintiff] would make statements about how [S]epulveda pushed [Plaintiff] first. Phillips said that he was just trying to detain Sepulveda [and] did not intend to kidnap him." (*Id.* at 6.) Plaintiff claims he never made such a statement, and that he had invoked his right to remain silent. (*See id.*) Officer Dubois also

24-CV-1818 TWR (DDL)

reported that "Plaintiff was armed with 17-Club, Blackjack, [and] Brass knuckles," although those weapons were not found on Plaintiff's person or in his vehicle. (*Id.* at 15–16.)   Officer Dubois misrepresented "statements that were being made by family members by saying 'so they came for revenge[.]'" (*Id.* at 19.)

Plaintiff spent four days in jail, (*id.* at 9; *see also id.* at 13), before being permitted to post bail in the amount of $100,000. (*See id.* at 9.)   The district attorney ultimately declined to prosecute because of the contradictory versions of events and lack of sufficient evidence. (*See id.* at 11.)

## II.   Procedural Background

Plaintiff filed his initial Complaint against Sergeant White, Officer Sison, Corporal Hicks, and the Chula Vista Police Department on October 9, 2024. (*See* ECF No. 1.) Plaintiff filed a document listing his "cause[s] of action" on December 3, 2024, (*see* ECF No. 10), which the Court construed as a clarifying addition to Plaintiff's initial Complaint.

On December 4, 2024, Plaintiff filed his First Amended Complaint as a matter of right against the same Defendants, (*see* ECF No. 11), and sought service through the United States Marshals Service ("USMS"), (*see* ECF No. 12), and leave to "submit a thumb drive with evidence to support" his amended complaint. (*See* ECF No. 13.)   Although the Court denied Plaintiff's request for service through the USMS, (*see* ECF No. 14 at 2), the Court granted Plaintiff leave to file a thumb drive containing videos and photos in support of his First Amended Complaint. (*See id.*)   Plaintiff lodged his thumb drive with the Court, (*see* ECF No. 15), and filed additional exhibits, (*see* ECF No. 20), on December 16, 2024.

Following Plaintiff's service of his First Amended Complaint on Defendants, (*see* ECF Nos. 16–19), Defendants moved to dismiss that pleading. (*See* ECF No. 24.)   On March 17, 2025, at the request of the Parties, (*see* ECF No. 31), the Court granted Plaintiff leave to file a further amended complaint and continued the hearing date and briefing schedule for Defendants' anticipated motion to dismiss. (*See* ECF No. 32.)

On March 19, 2025, Plaintiff filed his Second Amended Complaint ("SAC," ECF No. 33), which asserted causes of action for unlawful seizure and imprisonment in violation

of the Fourth and Fourteenth Amendments against Sergeant White, (*see id.* at 10–12); wrongful arrest and improper investigation against Sergeant White, (*see id.* at 13–15); and violation of constitutional rights without probable cause in violation of the Fourteenth Amendment against Sergeant White, (*see id.* at 16–18), Officer Sison, (*see id.* at 18–21), and Corporal Hicks, (*see id.* at 21–24).[2]  Defendants moved to dismiss on April 14, 2025. (*See generally* ECF No. 34.)

The Court granted in part and denied in part Defendants' motion on July 25, 2025, dismissing with prejudice Plaintiff's claims under the Fifth Amendment and dismissing without prejudice Plaintiff's claims under the Fourth and Fourteenth Amendments.  (*See generally* ECF No. 38 (the "Prior Order").)  Specifically, with respect to the claims for which the Court granted leave to amend, the Court concluded that Plaintiffs had failed sufficiently to plead his Fourth Amendment claims for wrongful detention and arrest of his person and unlawful search of his vehicle, (*see id.* at 6–10), and Fourteenth Amendment claims for malicious prosecution and fabrication of evidence.  (*See id.* at 11–13.)  Although the Court concluded that Plaintiff had adequately alleged a claim for the impoundment of his vehicle, (*see id.* at 10–11), the Court was required to dismiss that claim on grounds of qualified immunity, (*see id.* at 16–17), but the Court granted Plaintiff leave to amend.

Plaintiff filed his Third Amended Complaint on August 22, 2026, (*see generally* ECF No. 39), and, with leave of Defendants and the Court, (*see* ECF Nos. 40, 41), the operative Fourth Amended Complaint on September 5, 2026.  (*See generally* ECF No. 42.) Plaintiff's Fourth Amended Complaint adds a fourth Defendant, Officer Dustin Dubois (erroneously sued as Dustin Dubios), and asserted claims for unlawful search and seizure in violation of Plaintiff's Fourth Amendment rights against Sergeant White, Officer Sison, and Corporal Hicks, (*see* FAC at 12); false arrest/imprisonment in violation of Plaintiff's

---

[2]  Unlike Plaintiff's prior complaints, (*see generally* ECF Nos. 1, 11), Plaintiff's Second Amended Complaint did not name the Chula Vista Police Department as a Defendant.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (because amended pleading supersedes original, party named in prior complaint but not named in operative complaint is not proper party).

Fourth and Fourteenth Amendment rights against Sergeant White, Officer Sison, and Corporal Hicks, (*see id.* at 12–13); and fabrication of evidence in violation of Plaintiff's Fourteenth Amendment rights against Officer Dubois, (*see id.* at 13). Plaintiff filed his Motion lodging two thumb drives containing photographic and video evidence with the Court on September 19, 2025, (*see generally* ECF No. 44), which the Court treats as incorporated by reference into Plaintiffs' Fourth Amended Complaint.

Defendants' Motion followed on September 26, 2025. (*See generally* ECF No. 45.)

## LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight*

6

*Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

## ANALYSIS

Through the instant Motion, Defendants seek dismissal with prejudice, (*see* ECF No. 45-1 ("Mem.") at 1, 15–16), of each of Plaintiff's causes of action in his Fourth Amended Complaint for failure to state a claim under Rule 12(b)(6), (*see* Mem. at 4–10), and on the grounds that Defendants are entitled to qualified immunity.  (*See id.* at 10–15.)

## I.  Sufficiency of Plaintiff's Allegations

### A.  Fourth Amendment

The Fourth Amendment prohibits "unreasonable searches and seizures."  *See* U.S. Const. amend. IV.  Plaintiff alleges that Sergeant White, Officer Sison, and Corporal Hicks (the "Fourth Amendment Defendants") violated his Fourth Amendment rights by unlawfully detaining and arresting him and by unlawfully searching his vehicle.  (*See* FAC at 12–13.)  Defendants contend that Plaintiff fails to state a claim under any of these Fourth Amendment theories.  (*See generally* Mem. at 4–8.)

#### 1.  Unlawful Seizure of Person

Plaintiff alleges that the Fourth Amendment Defendants unlawfully detained and arrested him when they placed him in handcuffs and searched him without reasonable suspicion or probable cause.  (*See, e.g.*, FAC at 2–3, 12–13, 14–15.)  "There are two categories of police seizures under the Fourth Amendment: *Terry* stops and full-scale arrests."  *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 937 (9th Cir. 2020) (citing *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995)).

"Under *Terry v. Ohio*, 392 U.S. 1 (1968), police officers may conduct a brief, investigative stop of an individual when they have reasonable suspicion that the 'person apprehended is committing or has committed a criminal offense.'"  *Id.* (quoting *Arizona v. Johnson*, 555 U.S. 323, 326 (2009)).  The court "examine[s] the 'totality of the

circumstances' to determine whether a detaining officer has a 'particularized and objective basis' for suspecting criminal wrongdoing." *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "An officer cannot rely only upon generalizations that 'would cast suspicion on large segments of the lawabiding population.'" *Id.* (quoting *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006)). "'Seemingly innocuous behavior,' unless combined with other circumstances indicating criminality, does not justify a *Terry* stop." *Id.* (quoting *Manzo-Jurado*, 457 F.3d at 935). "During a *Terry* stop motivated by reasonable suspicion, the officer may ask investigatory questions, but the 'scope of the detention must be carefully tailored to its underlying justification.'" *Id.* at 938 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

"The second category of police seizures are arrests." *Id.* "An arrest must be supported by probable cause to believe that the person being arrested has committed a crime." *Id.* (citing *Allen*, 73 F.3d at 236). "Probable cause is more difficult to establish than reasonable suspicion, and is determined at the time the arrest is made." *Id.* (citing *Arvizu*, 534 U.S. at 273–74; *Allen*, 73 F.3d at 236). "It must be based on 'reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense.'" *Id.* (quoting *Allen*, 73 F.3d at 237). "Like reasonable suspicion, it can 'only exist in relation to criminal conduct.'" *Id.* (quoting *Allen*, 73 F.3d at 237).

The first question confronting the Court is whether the Fourth Amendment Defendants had reasonable suspicion or probable cause to handcuff Plaintiff upon arriving at the scene. Although it remains unclear precisely what events precipitated the call(s) to the Chula Vista Police Department and Plaintiff's role in those events, construing the facts most favorably to Plaintiff—as the Court must in ruling on Defendants' Motion—it appears that Defendants arrived in response to a call concerning a report that a fraud suspect was on the premises. (*See* FAC at 3, 5–6.) Defendants arrived to find Plaintiff standing beside his parked car at the reported residence. (*See id.* at 3.) Sergeant White then ordered Officer Harper to handcuff Plaintiff "until we figure out what is going on." (*See id.*)

8

Based on the facts alleged by Plaintiff, the Fourth Amendment Defendants had no reasonable suspicion, much less probable cause, to handcuff Plaintiff when they arrived on the scene.  The Ninth Circuit has

> only allowed the use of especially intrusive means of effecting a stop[, such as the use of handcuffs,] in special circumstances, such as 1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed; 3) where the stop closely follows a violent crime; and 4) where the police have information that a crime that may involve violence is about to occur.

*Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996).  "An additional factor courts consider in analyzing the reasonableness of the use of aggressive investigatory tactics as part of a *Terry* stop is the number of police officers present."  *Id.* at 1190.  Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, the Fourth Amendment Defendants were responding to a call concerning the location of a fraud suspect and arrived to find Plaintiff unarmed and cooperative.  Under these circumstances, Plaintiff has adequately alleged that the Fourth Amendment Defendants' initial handcuffing of him was not justified under the Fourth Amendment.

The calculus changes, however, once Defendants began to question Sepulveda and Pedraza, who told Defendants that Plaintiff and/or Mercado had struck Sepulveda more than once with a baseball bat, (*see* FAC at 5, 10), following which Sepulveda ran away from Plaintiff, (*see id.* at 9), and was chased by Mercado.  (*See id.* at 18.)  "[T]hese statements would be sufficient to persuade 'a person of reasonable caution to believe that an offense has been or is being committed.'"  *See Johns v. City of Eugene*, 771 F. App'x 739, 740 (9th Cir. 2019) (quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)) (reversing district court's denial of summary judgment on qualified immunity grounds where "the officers that responded to the incident were told by [the alleged victim] that [the alleged aggressor and plaintiff] had struck her with a baseball bat and then used the bat to smash her phone"); *see also, e.g.*, *Brainerd v. Cnty. of Lake*, 357 F. App'x 88, 90 (9th Cir. 2009) (affirming district court's grant of summary judgment in favor of the

24-CV-1818 TWR (DDL)

defendant deputies because they had probable cause to arrest the plaintiff "for threatening to hit his co-resident . . . in the head with a baseball bat during the course of an argument").

Plaintiff faults Defendants for not investigating more thoroughly and for arresting him despite the numerous inconsistencies both between Sepulveda's and Pedraza's statements and with Plaintiff's account. (*See* FAC at 5–6, 7–8, 9–11.) To the extent "Plaintiff appears to suggest that [Defendants] should have done more . . . [,] clearly established law requires only a reasonable investigation, not an exhaustive one." *Hart v. Sandoval*, No. 1:24-CV-00071-HBK, 2025 WL 2675833, at *10 (E.D. Cal. Sept. 18, 2025) (citing *Johns*, 771 F. App'x at 741). As Defendants note, (*see* Mem. at 6), "[p]robable cause requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *United States v. Brobst,* 558 F.2d 982, 997 (9th Cir. 2009) (citing *Brinegar v. United States,* 338 U.S. 160, 175 (1949)). "[O]fficers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." *Peng v. Hu*, 335 F.3d 970, 978 (9th Cir. 2003) (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001)). "A sufficient basis of knowledge is established if the victim provides facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator." *Id.* (internal quotation marks omitted) (quoting *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991)).

Here, despite contradictions regarding how many times Sepulveda was hit or who chased Sepulveda, Sepulveda and Pedraza did corroborate each other in reporting that Plaintiff had committed an assault by striking Sepulveda with a bat. Sepulveda's and Pedraza's reports were further corroborated by the recovery of a baseball bat at the scene. (*See* FAC at 7.) In other words, "[t]he officers did not just accept [Sepulveda]'s version of events at face value and arrest [Plaintiff]. Instead, . . . the officers questioned [Sepulveda, Pedraza, Plaintiff, and Mercado], and observed some physical evidence that corroborated [Sepulveda]'s claims before arresting [Plaintiff]." *See Johns*, 771 F. App'x at 741.

"Because the information that the officers obtained during the course of that investigation was 'sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested,' . . . the officers" had probable cause to arrest Plaintiff.  *See id.* (quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)).  Although the Court sympathizes with Plaintiff's frustration at finding himself in a "he said, she said" situation, "not all wrongs, even when perpetrated by a government actor, are redressable under § 1983."  *See Hennick v. Bowling*, 115 F. Supp. 2d 1204, 1208 (W.D. Wash. 2000).

The Court therefore **GRANTS IN PART** Defendants' Motion and **DISMISSES** Plaintiff's causes of action against the Fourth Amendment Defendants under the Fourth Amendment for wrongful arrest of his person.  The Court, however, **DENIES IN PART** Defendants' Motion to the extent Plaintiff alleges that Sergeant White and Officer Harper unlawfully handcuffed him upon their arrival at the scene.

*2.    Unlawful Search and Seizure of Vehicle*

Plaintiff also alleges that the Fourth Amendment Defendants illegally searched his vehicle.  (*See, e.g.*, FAC at 3–5, 12.)  "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

Here, Defendants contend that they lawfully searched Plaintiff's vehicle incident to his arrest.  (*See* Mem. at 7–8.)  "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations."  *Gant*, 556 U.S. at 338.  Consequently, "an automobile search incident to a recent occupant's arrest is constitutional (1) if the arrestee is within reaching distance of the vehicle during the search, or (2) if the police have reason to believe that the vehicle contains 'evidence relevant to the crime of arrest.'"  *Davis v. United States*, 564 U.S. 229, 234–35 (2011) (quoting *Gant*, 556 U.S. at 343).

11

As the Court previously concluded, (*see* Prior Order at 9–10), because Plaintiff had been handcuffed and separated from his vehicle, it appears unlikely that the first of the Supreme Court's search justifications under *Gant* would apply here. Under the second *Gant* justification, however, the Fourth Amendment Defendants could have believed that Plaintiff's vehicle may have contained evidence of the crimes for which he was arrested, including kidnapping and assault with a deadly weapon (not a firearm). Consequently, for the same reasons Plaintiff fails to allege an unlawful arrest, *see supra* Section I.A.1, Plaintiff fails plausibly to allege that the search of his vehicle conducted incident to that arrest was unconstitutional. The Court therefore **GRANTS IN PART** Defendants' Motion and **DISMISSES** Plaintiff's Fourth Amendment claims against the Fourth Amendment Defendants to the extent they are premised on the unlawful search of his vehicle incident to his arrest.

## B.   *Fourteenth Amendment*

Finally, Plaintiff alleges that Officer Dubois fabricated evidence in his police report in violation of Plaintiff's rights under the Fourteenth Amendment. (*See* FAC at 13.) As the Court previously explained, (*see* Prior Order at 12), in *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) (en banc), the Ninth Circuit recognized that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *See id.* at 1074–75. "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).

Defendants address only the first of these elements, arguing that Plaintiff's *Devereaux* claim must be dismissed because the inconsistencies in Officer Dubois' report and the alleged insufficiency of his investigation do not give rise to a plausible inference that Officer Dubois fabricated material evidence. (*See* Mem. at 8–10.) Although Defendants are correct in that regard, they fail to address Plaintiff's critical allegations that

24-CV-1818 TWR (DDL)

Officer Dubois included in his report several statements that Plaintiff never made, including, "several times while I was in booking with Phillips, he would make statements about how [S]epulveda pushed him first.  Phillips said that he was just trying to detain Sepulveda and did not intend to kidnap him," (FAC at 6), and "Plaintiff was armed with 17-Club, Blackjack, [and] Brass knuckles." (*Id.* at 15–16.)  Because Plaintiff alleges that Officer Dubois included incriminating statements that Plaintiff never made in his police report, the Court must conclude that Plaintiff sufficiently alleges that Officer Dubois engaged in deliberate fabrication of evidence.  *See, e.g.*, *Caldwell v. City & Cnty. of S.F.*, 889 F.3d 1105, 1114 (9th Cir. 2018) (reversing district court's grant of summary judgment in favor of sergeant defendant who included in his report that the plaintiff had "made a 'spontaneous statement' on the street about being present at the shooting and dealing drugs" where the plaintiff testified at his deposition that '[t]he only thing correct in [the disputed statement] is my name'") (alterations in original)); *Spencer*, 857 F.3d at 798 (reversing district court's grant of judgment as a matter of law in favor of the defendants on deliberate fabrication claim where the defendant officer's "investigative reports contained scores of quotations attributed to [the accused plaintiff's children], both of whom unequivocally testified at trial that they had never made those statements").

Because Defendants do not challenge Plaintiff's allegations regarding causation, the Court declines to do so in the first instance.  Accordingly, the Court **DENIES IN PART** Defendants' Motion to the extent Defendants seek dismissal of Plaintiffs' *Devereaux* claim against Officer Dubois.

## II.  Qualified Immunity

Alternatively, Defendants contend that they are entitled to qualified immunity.  (*See* Mem. at 10–15.)  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances two important interests—the need to hold

24-CV-1818 TWR (DDL)

public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

"In assessing whether qualified immunity applies, [the Court] consider[s] whether (1) the plaintiff has plausibly alleged a violation of a constitutional right, and (2) the constitutional right was 'clearly established' at the time of the alleged misconduct." *DeFrancesco v. Robbins*, 136 F.4th 933, 938 (9th Cir. 2025) (citing *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022)).   Where the plaintiff has failed plausibly to allege a violation of a constitutional right, "then the officer's conduct was constitutional, and there can be no violation of § 1983," and, consequently, "the officer has no need for immunity" because "he is innocent of the alleged infractions." *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012).

Here, the Court has determined that Plaintiff alleges plausible claims for wrongful detention, *see supra* pages 8–9, and fabrication of evidence, *see supra* pages 12–13. Accordingly, the Court must determine whether those "constitutional right[s] w[ere] 'clearly established' at the time of the alleged misconduct." *See DeFrancesco*, 136 F.4th at 938.  "To meet the 'clearly established' requirement, the law at the time of the conduct must have been 'sufficiently clear' that every 'reasonable official would have understood that what he is doing' was unlawful." *Id.* at 939 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  "In other words, 'the focus is on whether the officer had fair notice that her conduct was unlawful, . . . judged against the backdrop of the law at the time of the conduct.'" *Id.* (alteration in original) (quoting *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021)).  "A constitutional right may be 'clearly established by controlling authority or a robust consensus of cases of persuasive authority.'" *Id.* (quoting *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019)) (citing *Waid v. Cnty. of Lyon*, 87 F.4th 383, 388 (9th Cir. 2023); *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023)).  "The plaintiff bears the burden of proof that the right allegedly violated was clearly established

/ / /

at the time of the alleged misconduct." *Shooter v. Arizona*, 4 F.4th 955, 961 (9th Cir. 2021) (quoting *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991)).

### A.      Fourth Amendment Claim for Wrongful Detention with Handcuffs

Plaintiff contends that it was clearly established that he could not be detained without reasonable suspicion, citing to *Terry v. Ohio* and "*Davis v. Mississippi* and *Hicks v. Officers*." (*See* Opp'n at 14–15.)  Defendants counter that "temporary detentions during the rapidly evolving scene [*sic*] have been routinely upheld as constitutionally valid." (*See* Mem. at 12 (first citing *Saunders v. Knight*, No. CV F 04-5924 LJO WMW, 2007 WL 3482047, *16 (E.D. Cal. Nov. 13, 2007); then citing *Cannon v. City of Petaluma*, No. C 11-0651-PJH, 2012 WL 1183732, *9 (N.D. Cal. Apr. 6, 2012); then citing *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982)).)

In reviewing the cases cited by Plaintiff, the Court bears in mind that "[t]he 'clearly established' standard . . . requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Distr. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).  "The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *abrogated in part on other grounds by Pearson*, 555 U.S. 223).  "This requires a high 'degree of specificity.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam)).  The Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Id.* at 63–64 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).  "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Id.* at 64 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  "In the context of a warrantless [detention], the rule must obviously resolve whether the circumstances with which [the particular officer] was confronted . . .

/ / /

constitute[d] [reasonable suspicion]." *Id.* (internal quotation marks omitted and second through fourth alterations in original) (quoting *Mullenix*, 577 U.S. at 13).

The Supreme Court also has "stressed that the 'specificity' of the rule is 'especially important in the Fourth Amendment context,'" *id.* (quoting *Mullenix*, 577 U.S. at 12), and "the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'" *Id.* (alteration in original) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). "While there does not have to be 'a case directly on point,' existing precedent must place the lawfulness of the particular [detention] 'beyond debate.'" *Id.* (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).

The Court has carefully reviewed *Terry*, 392 U.S. 1; *Davis*, 394 U.S. 721; and *Arizona v. Hicks*, 480 U.S., 321 (1987), to determine whether they put Sergeant White and Officer Harper on notice that their handcuffing of Plaintiff was unlawful based on the facts provided by Plaintiff, namely, that the Fourth Amendment Defendants were responding to a call concerning a non-violent and non-emergent crime, had no reason to suspect that Plaintiff was armed, and found Plaintiff waiting for them calmly. Ultimately, the Court necessarily concludes that *Terry*, *Davis*, and *Hicks* involved factual patterns too distinct from those at issue here to provide the requisite degree of specificity. In *Terry*, for example, the Supreme Court affirmed a conviction for carrying a concealed weapon where the revolver had been discovered during a stop and frisk of a man whom the police officer had seen "acting in a manner [the officer] [had taken] to be a preface to a 'stick-up'" and whom "a reasonably prudent man would have been warranted in believing . . . was armed and thus presented a threat to the officer's safety while he was investigating his suspicious behavior." *See* 392 U.S. at 28. In *Davis*, the Supreme Court reversed a conviction based on fingerprint evidence that had been obtained during a second detention not supported by probable cause as part of a rape investigation. *See* 394 U.S. at 728. Finally, in *Hicks*, the Supreme Court affirmed the exclusion of evidence found in a search because the defendant policeman had only reasonable suspicion, and not probable cause, to believe that the stereos in question had been stolen. *See* 480 U.S. at 326. These cases define the law regarding

24-CV-1818 TWR (DDL)

warrantless detention at too high a level of generality to provide the Fourth Amendment Defendants with notice that their handcuffing of Plaintiff upon their arrival at the scene violated the Fourth Amendment.

Although the law was clearly established at the time based on the Court's independent research, *see, e.g.*, *Washington*, 98 F.3d at 1192 ("The law was also clearly established that if the *Terry*-stop suspects are cooperative and the officers do not have specific information that they are armed or specific information linking them to a recent or inchoate dangerous crime, the use of such aggressive and highly intrusive tactics is not warranted, at least when, as here, there are no other extraordinary circumstances involved."), as the Court previously noted, (*see* Prior Order at 16–17), "[t]he plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct." *Shooter*, 4 F.4th at 961 (quoting *Romero*, 931 F.2d at 627), and "Plaintiff is not relieved of this burden because he represents himself." *See Williams v. Alvarez*, No. CV-22-00154-PHX-MTL (CDB), 2025 WL 588233, at *4 (D. Ariz. Feb. 24, 2025) (collecting cases); *see also Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007) ("A district court lacks the power to act as a party's lawyer, even for pro se litigants."). As before, the Court therefore must conclude that Plaintiff has failed to meet his burden here and that the Fourth Amendment Defendants are entitled to qualified immunity on Plaintiff's surviving Fourth Amendment claim. Accordingly, the Court **GRANTS IN PART** Defendants' Motion and **DISMISSES** Plaintiff's claim that his immediate detention and handcuffing violated his Fourth Amendment rights.

### B.    *Fourteenth Amendment* Devereaux *Claim*

Plaintiff claims that it was clearly established in both *Devereaux* and *Spencer* that "[f]abrication of evidence by law enforcement to initiate or sustain prosecution violates due process." (*See* Opp'n at 14.) Defendants contend that *Devereaux* is distinguishable because that case "involved hours-long, suggestive interviews with young children regarding extreme claims of sexual abuse," where this case involves "statements made by the alleged victim and witness." (*See* Mem. at 14.)

24-CV-1818 TWR (DDL)

Even assuming that *Devereaux* did not suffice to put Officer Dubois on notice that his alleged fabrication of statements in his police report violated Plaintiff's constitutional rights, *Spencer* unquestionably did.  In *Spencer*, the Ninth Circuit reaffirmed its prior holding in *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101 (9th Cir. 2010), that "an interviewer who deliberately mischaracterizes witness statements in her investigative report . . . commits a constitutional violation."  *Spencer*, 857 F.3d at 798 (alteration in original) (quoting *Costanich*, 627 F.3d at 1111).  In that case, the defendant detective attributed several quotations to the plaintiff's minor children, who later testified that the quotations had been fabricated.  *See, e.g.*, *id.* at 795–96, 798–99.  In reversing the district court's grant of judgment as a matter of law to the defendants on the fabrication-of-evidence claim, the Ninth Circuit held that "the Constitution prohibits the deliberate fabrication of evidence whether or not the officer knows that the person is innocent."  *See id.* at 800.

Here, as in *Spencer*, Officer Dubois allegedly included statements in his investigative report that the witness—here, Plaintiff—denied making.  The Court therefore concludes that Plaintiff has carried his burden of establishing that a reasonable officer would have understood that falsely attributing a fabricated statement to a witness in an investigative report was unlawful at the time of Plaintiff's arrest.  The Court therefore **DENIES IN PART** Defendants' Motion to the extent it seeks dismissal of Plaintiff's *Deveraux* claim on the grounds that Officer Dubois is entitled to qualified immunity.

## III.    Leave to Amend

Finally, Defendants request that Plaintiff's Fourth Amended Complaint be dismissed without leave to amend.  (*See* Mem. at 1, 15; Reply at 7–8.)  As Defendants acknowledge, (*see* Mem. at 15), where a complaint is dismissed under Rule 12(b)(6), leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not cure the deficiency.  *See Schreiber Distrib.*, 806 F.2d at 1401.  "The 'rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant.'"  *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012)

24-CV-1818 TWR (DDL)

(quoting *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000)).  "At the same time, futile amendments should not be permitted." *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Smith v. Commanding Officer*, 555 F.2d 234, 235 (9th Cir. 1977)).

For the reasons discussed above, *see supra* Section I.A, the Court concludes that amendment would be futile as to Plaintiff's claims for unlawful arrest and unlawful search of his vehicle.  The Court therefore **DISMISSES WITH PREJUDICE** Plaintiff's Fourth Amendment claims based on his unlawful arrest and the search of his vehicle.  Because Plaintiff could allege that the law concerning his unlawful detention was clearly established at the time, the Court **DENIES IN PART** Defendants' Motion to the extent it seeks dismissal with prejudice of Plaintiff's Fourth Amendment claims against the Fourth Amendment Defendants based on their initial detention and handcuffing of Plaintiff, which claims the Court therefore **DISMISSES WITHOUT PREJUDICE**.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion.  Specifically, the Court **DISMISSES WITH PREJUDICE** Plaintiff's claims against the Fourth Amendment Defendants for his unlawful arrest and the unlawful search of his vehicle under the Fourth Amendment and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against the Fourth Amendment Defendants for his unlawful initial detention and handcuffing under the Fourth Amendment, for which the Court **GRANTS** Plaintiff leave to amend.  Defendants' Motion is otherwise **DENIED**. Plaintiff **MAY FILE** an amended complaint on or before March 26, 2026.

As before, (*see* Prior Order at 19), the Court advises Plaintiff that any amended complaint must be complete in itself without reference to his prior complaints.  Any defendants not named and any claims not re-alleged in the amended complaint—such as Plaintiff's prior claims against the Chula Vista Police Department and concerning the impoundment of his vehicle—will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original.");

*Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be considered waived if not repled). *Should Plaintiff elect not to file an amended complaint, this case* **SHALL PROCEED** *as to Plaintiff's surviving claim against Officer Dubois under* Devereaux.

Defendants **SHALL RESPOND** to Plaintiff's operative complaint <u>on or before April 9, 2026</u>.

**IT IS SO ORDERED.**

Dated:  March 4, 2026

_____

Honorable Todd W. Robinson
United States District Judge

24-CV-1818 TWR (DDL)